# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 17, 2026

Lyle W. Cayce
Clerk

No. 25-50171

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JAMES ANTHONY KIRKWOOD,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:23-CR-115-1

Before KING, SOUTHWICK, and HAYNES, *Circuit Judges*.

LESLIE H. SOUTHWICK, *Circuit Judge*:

The district court, applying the Mandatory Victims Restitution Act, ordered the defendant to pay restitution to a store clerk for psychological harm the defendant caused when committing a robbery. The district court provided two separate reasons for the order of restitution: mental anguish and lost income. In defending the award on the lost-income ground, the Government argues that "bodily injury" under the statute encompasses solely mental harms. We disagree and VACATE the challenged award of restitution.

No. 25-50171

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2023, James Kirkwood committed a chain of robberies. While at the checkout counter at a Dollar Tree in San Antonio, Texas, Kirkwood told the 71-year-old cashier, "Do not panic. I have a gun. I want the cash." The cashier, seeing a bulky item under Kirkwood's shirt, believed him. She called her manager, who handed him $260.

Three days later, Kirkwood was apprehended after robbing a different Dollar Tree with an air gun. Soon thereafter, he was charged with robbery under a federal statute. *See* 18 U.S.C. § 1951(a). Kirkwood pled guilty to one count of robbery. Importantly, he signed a waiver of his right to appeal on any ground.

The presentence investigation report ("PSR") referred to the victim impact statement from A.C., the 71-year-old cashier, that detailed the robbery's effect on her. According to her statement, A.C. quit her job at Dollar Tree the day of the robbery. She reported insomnia, nightmares, and general anthropophobia. A.C. refused to take any job that could make her the subject of another robbery. Instead, she took a job as a dishwasher.

In her statement, A.C. clarified that she suffered no physical harm and did not receive any medical treatment as a result of the robbery. Nevertheless, she claimed $8,400 in damages caused by her diminished earnings at her new job as a dishwasher compared to as a cashier at Dollar Tree. While she earned the same hourly rate at both jobs, she worked fewer hours as a dishwasher than as a cashier.

At Kirkwood's sentencing hearing, the district court addressed restitution. After the Government confirmed it had performed the necessary calculations and had arrived at the same number as A.C., Kirkwood's counsel objected to the calculations as "purely speculative." The court did not respond to that objection, but it did ask the Government and the

2

No. 25-50171

Probation Office whether "mental anguish [is] also an element of restitution to victims." The Government stated it did not "know of a reason why it cannot be"; the probation officer confessed a lack of familiarity with the law on the subject but acknowledged the probation office had "never considered mental anguish in a restitution" recommendation. The district court responded: "Well, we'll make some new law, and Mr. Kirkwood can take it up if he wants to." The court ordered "$945.39 for the store victims' lost sales" and "$8,000 in restitution to the lady who filed the victim impact statement, for a combination of lost wages. And if that is not actually supported, in the alternative, $8,000 for the mental anguish."

Kirkwood timely appealed from the judgment ordering restitution as to A.C.

## DISCUSSION

There are two issues. First, Kirkwood contends the court lacked statutory authority under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A (MVRA), to award restitution for mental anguish or lost income. Second, he argues the district court failed to conduct a proper proximate cause analysis in determining the award of restitution.

The Government responds that Kirkwood waived his right to appeal on these issues because his arguments do not constitute valid challenges to the statutory maximum under one of the exceptions to the appeal waiver rule. *See Hunter v. United States*, 146 S. Ct. 1702, 1713–14 (2026). Even if the appeal waiver does not apply, the Government also argues that on plain error review, Kirkwood's arguments fail because there is no settled caselaw on the subject and "it is only reasonable to understand that 'bodily injury' must include 'mental trauma,'" as the "brain is part of the body."

We address the appeal waiver before considering other issues. An appeal waiver does not bar a challenge that a sentence, "including the amount

of a restitution order, exceeds the statutory maximum." *United States v. Kim*, 988 F.3d 803, 811 (5th Cir. 2021). "A federal court cannot order restitution without statutory authorization." *United States v. Koutsostamatis*, 956 F.3d 301, 303 (5th Cir. 2020). Under the MVRA, "a defendant may . . . challenge whether the district court had the authority to issue restitution in the first place," notwithstanding an appeal waiver. *United States v. Lucas*, 134 F.4th 810, 817 (5th Cir. 2025). Even so, "when a defendant invokes the exceeds-the-statutory-maximum exception to circumvent an appeal waiver, courts must carefully consider[] the relevant statute to determine whether the challenge properly falls within the exception." *Id.* at 815 (alteration in original) (citation and quotation marks omitted).

In sum, if the MVRA does not permit an award of restitution in this case, the appeal waiver is inapplicable because the sentence, in effect, exceeds the statutory maximum. We start, then, with the MVRA.

## I.    *Compensation for Mental Anguish under the MVRA*

### *A. Standard of Review*

The applicable standard of review for this first issue is a more difficult question than usual. At his sentencing hearing, Kirkwood failed to object to the imposition of restitution based on mental anguish alone. The Government argues that the failure to object means our review is for plain error. Kirkwood contends that *de novo* review applies.

Here, the district court *sua sponte* raised and resolved the merits of a legal issue regarding sentencing. Kirkwood did not object. The Fifth Circuit has no precedent directly addressing the standard of review in such a situation. We therefore consider the justifications of the preservation rules and some precedents from other circuits.

No. 25-50171

Federal Rule of Criminal Procedure 51 states that "[e]xceptions to rulings or orders of the court are unnecessary," and that a "party *may* preserve a claim of error by informing the court." FED. R. CRIM. P. 51 (emphasis added). The general rule is that if "the defendant does not make the district court aware that it may be" committing error, "then the defendant's appeal will be governed by plain-error review." *Esteras v. United States*, 145 S. Ct. 2031, 2045 (2025). This rule "should not be applied in a ritualistic fashion. If the problem has been brought to the attention of the court, and the court has indicated in no uncertain terms what its views are, to require an objection would exalt form over substance." 3B WRIGHT & MILLER'S FEDERAL PRACTICE AND PROCEDURE § 842 (4th ed. 2025). Rule 51 generally requires an objection for an issue to be preserved on appeal because that rule serves the goal of ensuring that the district court is informed of the issue and is provided an opportunity to correct itself if it errs. *See United States v. Santiago*, 96 F.4th 834, 842 (5th Cir. 2024).

The Tenth Circuit held that "when the district court *sua sponte* raises and explicitly resolves an issue of law on the merits, the appellant may challenge that ruling on appeal on the ground addressed by the district court even if he failed to raise the issue in district court."[1] *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1328 (10th Cir. 2003); *see also United States v. Gardner*, 826 F. App'x 218, 222 (3d Cir. 2020) (quoting *Hernandez-Rodriguez*, 352 F.3d at 1328) (allowing the Government to challenge sentencing ruling despite not having objected specifically to that issue). The Tenth Circuit has explained that its rule does not disturb the established principle that "the appellate court cannot review issues and arguments that

---

[1] As explained in this opinion, the Third, Seventh, Ninth, Tenth, and D.C. Circuits have all applied this rule in some form or another, whether that be as a precedential rule or in application to a particular case in an unpublished opinion.

the district court never had an opportunity to consider. If the district court was 'adequately alerted to the issue,' and . . . responded to the issue, then we are able to review on appeal." *United States v. Garcia*, 936 F.3d 1128, 1132 (10th Cir. 2019). The district court certainly was alerted to an issue when the court was the one identifying it.

The D.C. Circuit has held that the ordinary rule that the court "will not entertain arguments not made in the district court . . . does not apply where the district court nevertheless addressed the merits of the issue." *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 707 (D.C. Cir. 2009). The Ninth Circuit has followed *Hernandez-Rodriguez* in a similar context as well. *See Comcast, LLC v. Sacramento Metro. Cable Television Comm'n*, 923 F.3d 1163, 1168–69 (9th Cir. 2019). In *Comcast*, the Ninth Circuit held that an issue was not waived because it was "raised and addressed by the district court *sua sponte*," such that the issue was "raised sufficiently for the trial court to rule on it." *Id.* (citations omitted). Also relevant was that the issue was "purely one of law and [did] not depend on the factual record['s]" state of development. *Id.* at 1169 (citation omitted); *see United States v. Johnson*, 93 F.4th 383, 387 (7th Cir. 2024).

In the case before us, there was no need for Kirkwood to put the court on notice that it had no authority to order restitution for mental anguish, as the district court itself identified that issue before dismissing it. The purposes for which we generally require objection do not apply.[2] We find no waiver of the issue, but we still need to decide the review standard.

---

[2] Indeed, a panel of this court has held that an objection was properly preserved, even though the defendant objected under the wrong statutory provision, as "the district court engaged in an extended dialogue" on the issue, "the Government gave a detailed response on the record in defense of the enhancement," and the defendant had raised an objection "in such a manner so that [the district court could] correct itself and thus, obviate the need for our review." *United States v. Amaya*, 576 F. App'x 416, 418–19 (5th Cir. 2014)

No. 25-50171

The district court asked the Government and the Probation Office: "Is mental anguish also an element of restitution to victims, . . . or is there any reason why it can't be?" The Government responded that it "do[es not] know of a reason why [psychological harm] cannot be" part of the restitution calculus; the Probation Office replied that it was "actually not certain of the law on that issue," but it had "never considered mental anguish in a restitution" calculation before. The court decided: "Well, we'll make some new law, and Mr. Kirkwood can take it up [to the Fifth Circuit] if he wants to."

Here, the district court *sua sponte* raised and resolved the purely legal question of whether it had the authority to award restitution for mental anguish standing alone. The court was aware of the issue, asked the Government and the Probation Office for their views, and elected to act with an express acknowledgment that its ruling would be subject to our review. While the district court did not explicitly reference Section 3663A(b), it considered, without any prompting, whether it had the authority to grant restitution for mental anguish independently of any other ground. It held that it had such authority.

The parties and the court had notice of and opportunity to consider this purely legal issue of whether the district court had the authority to grant restitution for mental anguish. *See Garcia*, 936 F.3d at 1132. Thus, we give *de novo* review to the issue of whether the district court had the authority to award restitution for mental anguish in this case.

---

(citation omitted). The *Hernandez-Rodriguez* case was discussed and cited in the briefing in that case as the justification for preservation. Reply Brief of Appellant at 8, *Amaya*, 576 F. App'x 416 (No. 13-40080). We agree with that panel's reasoning.

7

### B.  The Mandatory Victims Restitution Act

We now examine the legal issue of whether the district court had authorization under the MVRA to award restitution for mental anguish. Kirkwood argues that the MVRA nowhere authorizes restitution for mental anguish and that the award was thus fatally defective.  The Government does not, in its briefing on appeal, address the mental anguish basis for the award.

Because this is a question of statutory interpretation, we begin with the text.   The MVRA applies to certain types of offenses, including "crime[s] of violence," "offense[s] against property . . . , including any offense committed by fraud or deceit," and two other specific offenses, so long as there is an "identifiable victim" who has "suffered a physical injury or pecuniary loss."   18 U.S.C. § 3663A(c)(1).  Once past this threshold question, the MVRA requires the court to order restitution for certain types of injuries: "in the case of property offenses, return of the property taken or its value, § 3663A(b)(1); in the case of bodily injury, the payment of medical expenses and lost income, § 3663A(b)(2); in the case of death, the payment of funeral expenses, § 3663A(b)(3);" and reimbursement for certain costs incurred "in the investigation or prosecution of the offense," § 3663A(b)(4). *Lagos v. United States*, 584 U.S. 577, 580 (2018).

"A federal court cannot order restitution without statutory authorization."  *United States v. Koutsostamatis*, 956 F.3d 301, 303 (5th Cir. 2020).  Accordingly, for the district court's restitution award to stand, there must be some statutory home for it.  We find none.  There is no textual provision of the MVRA that would justify granting restitution for mental anguish.  A.C.'s mental anguish is not property and thus not subject to Section 3663A(b)(1).  Even if A.C.'s mental anguish qualified as a bodily injury, there is no evidence in the record of medical expenses.  *See* § 3663A(b)(2)(A)–(B).  Plus, the district court affirmatively distinguished

the mental anguish basis from the MVRA provision relating to lost income, which will be discussed below, so Section 3663A(b)(2) cannot ground the award in this provision.  The funeral provision certainly does not apply here, § 3663A(b)(3), nor has any person asserted that A.C. is entitled to costs associated with "participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense," so the remaining provisions cannot justify it either.  § 3663A(b)(4).

Because the MVRA does not authorize restitution for mental anguish, the district erred in awarding restitution on that ground.

The district court provided a second ground for the award, so we address it next.

## II.    Compensation for Lost Income under the MVRA

The district court also stated that it awarded the restitution for lost income.  As to that award, the district court did not present a new issue *sua sponte*.  Instead, the award was based on the Government's calculations tied to A.C.'s $400-per-month decrease in take-home pay.  Because Kirkwood made no objection to the district court's lack of authority to award lost income restitution in the absence of a bodily injury, we review this issue for plain error.  *United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005).  Kirkwood must show that "(1) there is an error, (2) the error is plain, and (3) the error affects substantial rights."  *Id.*  If all these elements are satisfied, we may exercise our discretion to correct the error when it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *United States v. Olano*, 507 U.S. 725, 731–32 (1993).

First, error.  We must examine whether the district court had authorization under the MVRA to award lost-income restitution.  The parties agree that the only possible textual source for the lost-income restitution order is the MVRA's requirement that a court order restitution

to victims who suffer "bodily injury" for certain harms proximately caused
by the offense. Because this is a question of statutory interpretation, we begin
with the text. *United States v. Kaluza*, 780 F.3d 647, 658 (5th Cir. 2015). The
relevant portion of the MVRA provides:

> The order of restitution shall require that such
> defendant — . . . in the case of an offense resulting in bodily
> injury to a victim —
>
> (A) pay an amount equal to the cost of necessary
> medical and related professional services and devices relating
> to physical, psychiatric, and psychological care, including
> nonmedical care and treatment rendered in accordance with a
> method of healing recognized by the law of the place of
> treatment;
>
> (B) pay an amount equal to the cost of necessary
> physical and occupational therapy and rehabilitation; and
>
> (C) reimburse the victim for income lost by such victim
> as a result of such offense . . . .

18 U.S.C. § 3663A(b)(2).

We "interpret the words consistent with their ordinary meaning . . . at
the time Congress enacted the statute." *Wisconsin Cent. Ltd v. United States*,
585 U.S. 274, 277 (2018) (alteration in original) (quotation marks omitted)
(quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). "Ordinarily, a
word's usage accords with its dictionary definition." *Yates v. United States*,
574 U.S. 528, 537 (2015). We therefore look to contemporaneous dictionary
definitions to inform our interpretation of "bodily injury." The dictionaries
we surveyed were unanimous in that "bodily injury" or "bodily" pertains to
the physical body. *Bodily*, THE MERRIAM-WEBSTER DICTIONARY 97
(1997) ("[O]f or relating to the body . . . in the flesh."); *Injury*, BLACK'S
LAW DICTIONARY (7th ed. 1999) (defining "bodily injury" as "[p]hysical
damage to a person's body"); *Bodily*, BLACK'S LAW DICTIONARY (6th

ed. 1990) (defining "[b]odily injury" as "refer[ring] only to injury to the body, or to sickness or disease contracted by the injured as the result of injury"). One dictionary defines "[b]odily condition" as the "[s]tatus of [the] human body at a given point in time as contrasted with state of mind." *Bodily*, Black's Law Dictionary (6th ed. 1990). The Government offers no contrary definition, nor does it attempt to justify that the meaning it seeks to apply deviates from the meaning found in every dictionary exhausted in the search thus far. Thus, the meaning of the statutory language is, on its face, plain.

Other provisions in the MVRA may offer relevant context. One of the Government's arguments is that the MVRA requires a court to order restitution in the amount that is necessary to cover the victim's "medical and related professional services and devices relating to physical, psychiatric, and psychological care," arising out of the victim's "bodily injury." *See* § 3663A(b)(2)(A). Therefore, the Government insists, because a defendant may be required to pay for psychiatric care, the statute sweeps in mental and emotional injuries.

Not so. The reference in the provision to "psychiatric, and psychological care" cannot be separated from the requirement that such care be reimbursable *only if* the care is necessary due to an offense resulting in bodily injury. *See* § 3663A(b)(2). Such language would apply, for example, if a robbery victim suffered serious physical injuries that not only necessitated surgery but also required psychological care. The statutory context accordingly does not controvert the plain meaning of the text but is perfectly consonant with it.

The Government also argues that "it is only reasonable to understand that 'bodily injury' must include 'mental trauma.' The brain is part of the body." The quoted sentence is notable, most obviously because it equates

effects on the complex inner workings of the mind with injury to the physical body. One way to view this assertion is that the Government has taken a side in a centuries-old philosophical battle about whether the mind and body are distinct, *i.e.*, whether the mind is a different thing from the body altogether or is material and thus comprised of no more than electrical and chemical processes. *See, e.g.*, Howard Robinson, *Dualism*, STANFORD ENCYCLOPEDIA OF PHIL., https://plato.stanford.edu/entries/dualism (2025). We make that possibly irrelevant observation and move on.

The Government's argument also is unsupported in the caselaw.[3] In various contexts, the law separates physical and mental injury. Among the federal statutes that identify the two as separate is the Prisoner Litigation Reform Act, which states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Of course, the statutory text here is "bodily," not "physical," but that distinction makes no difference under the Government's theory that mental anguish is a bodily injury because the brain is a "part of the body."

Yes, the brain is part of the body, but the Government has not identified any authority that mental trauma should be considered trauma of the body. Such arguments are often made in insurance coverage disputes solely for bodily or physical injury. In the caselaw on such disputes in this

---

[3] Dating back centuries, our law, across an array of domains, *assumes* mind–body dualism. Dov Fox & Alex Stein, *Dualism and Doctrine*, 90 IND. L.J. 975, 983 (2015) ("Yet much in the doctrines of harm, compulsion, and intentionality assume[s] . . . that operations of the mind are distinct in critical conceptual, functional, and normative respects from bodily ones."). Asking us to rethink this basic assumption arguably calls into question bedrock principles of our legal system. *See* Joseph Avery, *Greatly Exaggerating Dualism's Death: Neuroscience and U.S. Law*, 105 CORNELL L. REV. ONLINE 127, 130–31 (2020).

circuit, we have uniformly held that "bodily injury" does not encompass purely mental anguish.  For example, after finding no on-point Texas state court precedent, we have held, "at least in the context of the policy at issue and the facts alleged [t]here, the phrase 'bodily injury' unambiguously excludes" solely psychological injury.  *Travelers Indem. Co. of R.I. v. Holloway*, 17 F.3d 113, 115 (5th Cir. 1994).  Again as to Texas law, that state's Supreme Court later answered our certified question and informed us that bodily injury does not include "coverage for mental anguish, unrelated to physical damage to or disease of the plaintiff's body."  *Evanston Ins. Co. v. Legacy of Life, Inc.*, 487 F. App'x 163, 164 (5th Cir. 2012).  Further, the "common law of torts does not permit recovery for negligently inflicted emotional distress *unless . . .* that distress accompanies a physical injury."  *Metro-N. Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 429–30 (1997).

We have not been presented with, nor have we encountered, any similarly situated statute or caselaw that equates bodily injury and purely mental trauma.[4]  We conclude that the MVRA does not allow restitution for lost income when there is no accompanying *bodily* injury.  Those are our facts — purely psychological harm — and we need decide no more than that.

Second, whether the error is plain.  For starters, as Kirkwood points out, the weight of out-of-circuit authority overwhelmingly favors him.[5]  Yet,

---

[4] The only relevant statutory provision the Government offers to the court is a consumer protection statute.  *See* 18 U.S.C. § 1365(h)(4).  That statute, which imposes criminal sanctions for tampering with consumer products, does define "bodily injury," in part, as the "impairment of the function of a bodily member, organ, or mental faculty."  *See id.* § 1365(h)(4)(D). Of course, such clear statutory language controls over whatever the usual meaning of relevant terms might be.  Moreover, as we discuss at length below, the statute also requires a physical injury — at least a common-law battery.

[5] *United States v. Maynard*, 743 F.3d 374, 380 (2d Cir. 2014) ("The expense is arguably attributable to the psychological recovery of the regular staff present during the robbery; however, the MVRA unambiguously limits recovery for psychological harm to

the Government argues that two cases establish that the error, if error it is, does not qualify as plain. The first of these involved a police officer who sexually assaulted several young people. *United States v. Sepulveda*, 64 F.4th 700, 703 (5th Cir. 2023). The criminal defendant there challenged the award of restitution to one of the victims who claimed restitution for lost income, as his "mental problems" arising out of the offense rendered him essentially unable to work. *Id.* at 713. While the indictment did not allege that Sepulveda had caused the victim bodily injury, no court involved in that case, at any time, addressed any argument that the award was defective because there was no bodily injury, nor did any party raise such an argument. *See id.* at 713–15. Because the issue was not raised or addressed by the parties or the judges involved in that case, *Sepulveda* does not bear on the question before us.

The Government rests its argument on an opinion from the Seventh Circuit, where that court reviewed an award of restitution under the MVRA for purely psychological damage for plain error. *See United States v. Breshers*, 684 F.3d 699, 702 (7th Cir. 2012). The Seventh Circuit held that there was some ambiguity in the statutory language, as the statute was susceptible to "alternate plausible readings." *Id.* That court reasoned that — despite dictionaries' unanimity as to the meaning of bodily injury — the inclusion of the phrase "physical, psychiatric, and psychological care" introduces some

---

instances of 'bodily injury.'" (quoting 18 U.S.C. § 3663A(b)(2))); *United States v. Reichow*, 416 F.3d 802, 806 (8th Cir. 2005) ("The plain language of § 3663(b)(2)(A) authorizes restitution for professional services for psychiatric and psychological care in cases where the offense results in bodily injury to a victim."); *United States v. Husky*, 924 F.2d 223, 226 (11th Cir. 1991) ("The list of compensable injuries does not include mental anguish or psychological disturbance."); *United States v. Hicks*, 997 F.2d 594, 601 (9th Cir. 1993) ("The cost of psychological counseling can be included in a restitution order only when the victim has suffered physical injury."); *United States v. Manna*, 201 F. App'x 146, 148 (4th Cir. 2006) ("Section 3663A(b)(2)(A) requires proof of bodily injury to a victim before a court may order restitution for counseling.").

ambiguity, explaining that it viewed the term "bodily injury" to be arguably redundant if it included "physical, psychiatric, and psychological care." *Id.* Alternatively, "bodily injury" could be an "umbrella term," including several types of care. *Id.*

We decline to follow the Seventh Circuit's reasoning. As discussed above, we do not see the statute's text to be ambiguous — the only time a victim can receive restitution for "physical, psychiatric, and psychological care" is when such costs are incurred in connection with an "offense resulting in bodily injury." § 3663A(b)(2). Section 3663A(b) bounds the care compensable under the statute within the universe of offenses resulting in bodily injury. In this sense, it is a *threshold* requirement, not an independent source of meaning that alters the types of "physical, psychiatric, and psychological care" subject to restitution. *Id.* Thus, we are not persuaded that the language is susceptible to multiple interpretations.

The Seventh Circuit's other analysis, which is also pressed by the Government, is that another federal statute defines "bodily injury" as encompassing, among other things, the "impairment of the function of a bodily member, organ, or mental faculty." *Breshers*, 684 F.3d at 702–03; 18 U.S.C. § 1365(h)(4). We do not find the cited criminal consumer-protection statute helpful here, as the "bodily harm" that could result from tampering with consumer products is necessarily physical: It must be caused by "any food, drug, device, or cosmetic," or an "article, product, or commodity which is customarily produced or distributed for consumption by individuals." *Id.* § 1365(h)(1) (quotation marks omitted). Because the harm must follow the consumption or use of a tainted product and thus requires at least some physical or bodily interaction, the statute does not assist the government.

Further weakening reliance on this statute, *Breshers* was handed down two years before the Supreme Court — interpreting language identical to that which *Breshers* points to as arguably allowing bodily injury to encompass solely mental harm in the context of a state criminal statute — held that bodily injury so defined required at least a common-law battery. *United States v. Castleman*, 572 U.S. 157, 169–70 (2014) ("It is impossible to cause bodily injury without applying force in the common-law sense."). Included in common-law battery is, *e.g.*, causing another to drink poison. *Id.* While *Breshers* may have been persuasive had we heard this case in 2012, it is not nearly so persuasive now:  Identical language to that which it interpreted as introducing doubt to plain language has now been construed by the Supreme Court, and the chorus of circuits holding that mental injury alone is insufficient has grown even louder since *Breshers*.

Even though this is a question of first impression in this circuit, the statutory language before us is unambiguous.  *See United States v. Silva-De Hoyos*, 702 F.3d 843, 849 (5th Cir. 2012) (finding plain error when "the language of the statute is unambiguous," despite being an "issue of first impression in this circuit").  Accordingly, we find the district court's error to be plain.

Third, substantial rights.  We hold that the error affects Kirkwood's substantial rights because "the outcome of the district court proceedings would have been different if the error had not occurred." *Inman*, 411 F.3d at 595.  This is true because the district court was not authorized to award any restitution at all to A.C., as Kirkwood did not cause her any bodily injury. *United States v. Maturin*, 488 F.3d 657, 663 (5th Cir. 2007).

Lastly, we elect to exercise our discretion in this case, as "error[s]" that are "'judicial' in nature . . . usually support[] error correction" due to their direct effect on the "public reputation of judicial proceedings." *United*

No. 25-50171

*States v. Dubois*, 164 F.4th 418, 424 (5th Cir. 2026) (quoting *Rosales-Mireles v. United States*, 585 U.S. 129, 134 (2018)).  We mention the district court's comments, that the opportunity for this court to review the decision was a reason for the ruling, even in the absence of clear authority.  We exercise our discretion, and Kirkwood's challenge succeeds on plain error review.

Congress wrote the MVRA such that it does not authorize restitution for wholly psychological damages.  It certainly is arguable that restitution should be available for victims such as A.C., but the statute would need to be revised to allow it.  We VACATE the restitution award as to A.C.

Haynes, *Circuit Judge*, dissenting:

With respect to James Kirkwood's contention that the Mandatory Victims Restitution Act ("MVRA") does not authorize restitution for lost income unless the victim suffered a *physical* bodily injury, I would affirm. I assume that the majority opinion is correct that Kirkwood's appeal waiver does not bar this particular challenge, but, unfortunately, I cannot agree with the ultimate decision. I respectfully dissent.

I agree with the majority opinion that plain error review is appropriate, but I disagree that the district court committed plain error. Below, I explain that Kirkwood's challenge fails and his remaining challenge, which the majority opinion does not reach, also fails.

Kirkwood cannot demonstrate that the district court plainly erred when awarding restitution for lost income under the MVRA in the absence of a physical injury. Kirkwood is unable to point to a prior case from our court that addressed the issue at hand. But what is more, when confronted with a strikingly similar situation, the Seventh Circuit concluded that it was not plainly erroneous to order restitution where the victims did not suffer physical injuries—mental injuries were sufficient. *United States v. Breshers*, 684 F.3d 699, 702–03 (7th Cir. 2012). I would reach the same conclusion. Indeed, I disagree with the majority opinion's conclusion that the statutory language is so clear here that the restitution award was plainly erroneous, even in the absence of an on-point case. So, Kirkwood cannot prevail under plain error review. Then, because the award of lost income was not plainly erroneous, I need not reach Kirkwood's separate challenge to the district court's alternative holding awarding restitution for mental anguish.

Kirkwood's remaining challenge on appeal likewise fails. Because I conclude that the district court did not plainly err with respect to the bodily-injury issue, I next reach Kirkwood's assertion that the district court failed to

No. 25-50171

determine whether his conduct proximately caused A.C.'s lost income. However, Kirkwood's challenge to the district court's proximate-cause analysis is waived. Kirkwood waived his right to appeal when pleading guilty. When a defendant challenges a district court's proximate-cause analysis, we have made clear that, "so long as the district court performed some sort of analysis," the waiver applies. *United States v. Lucas*, 134 F.4th 810, 817 (5th Cir. 2025). Here, the district court conducted an analysis such that Kirkwood cannot circumvent his appeal waiver.

\* \* \*

Because I would affirm, I respectfully dissent.